UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DANIEL MARTIN POMPOS**,                     Case Number 3:12 CV 2276

    Plaintiff,                                           Judge Jeffrey J. Helmick

    v.                                                  REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                                       Magistrate Judge James R. Knepp II

INTRODUCTION

Plaintiff Daniel Martin Pompos seeks judicial review of Defendant Commissioner of Social Security's decision to deny Disability Insurance Benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated September 10, 2012). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

PROCEDURAL BACKGROUND

On July 1, 2009, Plaintiff filed an application for DIB claiming he was disabled due to chronic obstructive pulmonary disease (COPD) and a ruptured disc. (Tr. 131-37, 146, 150). He alleged a disability onset date of February 13, 2009. (Tr. 131). His claim was denied initially (Tr. 71-74) and on reconsideration (Tr. 76-78). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 81). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 16, 33). The Appeals Council denied Plaintiff's request for review, making the hearing decision the

final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. On September 7, 2012, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

The relevant period for Plaintiff's DIB claim began on February 13, 2009 – his alleged onset date – and ended January 31, 2013 – his date last insured. (Tr. 21, 131). 20 C.F.R. § 404.131(a) (claimant bears the burden to prove his impairment became disabling prior to the date his insurance status expired).

### Daily Activities and Testimony

Plaintiff was 47 years old at the time of his alleged onset date. (Tr. 131). He completed tenth grade and had past relevant work experience as a charter aircraft dispatcher. (Tr. 39-40). He was laid off from his job in February 2009, and collected unemployment for parts of 2009 and 2010. (Tr. 138-39).

Plaintiff lived on the second floor of his parents' duplex and climbed stairs to get to his apartment. (Tr. 50). Concerning daily activities, Plaintiff groomed himself, prepared meals, did light household chores, drove, watched television, used his computer, and shopped for groceries. (Tr. 51-53). He also visited friends and family once or twice a month. (Tr. 54).

### Medical Evidence - Back Pain

On June 27, 2007, prior to his alleged onset date, x-rays of Plaintiff's lumbar spine revealed mild degenerative changes. (Tr. 191). An MRI that same day revealed mild multi-level disc disease without compression deformity or malalignment; including right posterior lateral disc herniation compressing the exiting right nerve root at L2-L3, moderate bilateral neural foraminal narrowing and central narrowing from a disc protrusion at L4-L5, high grade left neural foraminal narrowing at L4-L5; and mild non-compressive disc bulge at L5-S1. (Tr. 192).

Another x-ray of Plaintiff's lumbar spine taken January 14, 2008, showed multi-level discogenic spondylosis from L2-S1, most severe at L5-S1, moderate to advanced involvement at L2-3, and mild to moderate discongenic spondylosis at L3-4 and L5-S1. (Tr. 193).

Plaintiff sought treatment with Sylvania Chiropractic in 2008, before the relevant time-period. (Tr. 194-97, 232-35). His chiropractic treatment regimen included hot packs, stretching, and home exercises. (Tr.194-97, 232-35). On occasion, Plaintiff reported exacerbated pain (Tr. 194), but generally exercise provided relief (Tr. 195, 234). Overall, Plaintiff's condition improved, including improved range of motion and functional ability. (Tr. 195, 196, 232-35).

On May 21, 2009, Plaintiff saw Dr. Siebenaler at Oregon Urgent Care and Family Practice with complaints of lumbar spine pain and a history of COPD. (Tr. 211). On examination, Plaintiff's lumbar spine was tender to palpation and he had decreased range of motion due to pain and discomfort, but his nerves were intact. (Tr. 211). Dr. Siebenaler diagnosed back pain and COPD and prescribed Spiriva, a breathing medication. (Tr. 212).

**Medical Evidence - COPD**

On February 26, 2009, Plaintiff saw Dr. Siebenaler to refill his Spiriva prescription. (Tr. 213). He complained of coughing and a history of COPD. (Tr. 213). In June 2009, Dr. Siebenaler diagnosed Plaintiff with asthmatic bronchitis and refilled his Spiriva prescription. (Tr. 208).

An x-ray of Plaintiff's chest taken February 11, 2010, revealed a diaphragmatic hernia but no other abnormalities. (Tr. 228). Dr. Siebenaler noted Plaintiff was "going for disability" on the radiology report. (Tr. 228).

On August 23, 2010, Dr. Siebenaler noted Plaintiff remained "disabled indefinitely." (Tr. 231). Subsequently, on February 24, 2011, Dr. Siebenaler filled out a physical capacity evaluation form and found Plaintiff could only sit for three hours in an eight-hour workday, stand

for two hours in an eight-hour workday, walk for two hours in an eight-hour workday, and lift and carry five pounds occasionally and zero pounds frequently. (Tr. 283). He also found Plaintiff should change positions often and at will, avoid exposure to dust, and leave his workstation periodically to move about and stretch his legs. (Tr. 283). Finally, Dr. Siebenaler found Plaintiff would miss three or more workdays per month and his pain would restrict his ability to concentrate less than 80 percent of a workday. (Tr. 283)

**Consultive Examination**

On January 28, 2010, Plaintiff saw Donato Borrillo, M.D., J.D., M.S., for a consultive examination at the request of his counsel. (Tr. 274-81). Plaintiff said his current medications included Spiriva, Flonase, Midron for migraines, and aspirin. (Tr. 278). He said he used a heating pad for his back. (Tr. 278). He reported his medical history, which included COPD, migraines, degenerative joint disease in his hip, thoracic spine discomfort, diabetes controlled by diet, emphysema, partially collapsed left lung, deviated septum, and obstructive sleep apnea. (Tr. 274-78).

On examination, Plaintiff walked with a limp favoring his right hip. (Tr. 279). He had scant wheezing and diminished breath sounds. (Tr. 279). Dr. Borrillo noted Plaintiff had tenderness in his thoracic spine, decreased range of motion (lumbar and thoracic), and positive seated straight leg-raise testing bilaterally, but grossly intact cranial nerves and full muscle strength. (Tr. 279).

Dr. Borrillo found Plaintiff was unable to return to remunerative employment. (Tr. 279). He stated Plaintiff had "several medical conditions" that made him unable to perform "sedentary work" or productive work for more than four hours. (Tr. 279). As support, he pointed to Plaintiff's right hip arthritis and two herniated discs, adding these conditions required continued

4

conservative care. (Tr. 280). Dr. Borrillo also found Plaintiff would miss more than one-to-two workdays per month due to his pulmonary condition. (Tr. 280).

**State Agency Physician Assessments**

On October 13, 2009, state agency physician Eli Perencevich, D.O., reviewed Plaintiff's medical records and concluded he could perform light work with occasional stooping and crouching; he could not climb ladders, ropes, or scaffolds; and he should avoid concentrated exposure to fumes, odors, dust, gasses, poor ventilation, and hazards, such as machinery and heights. (Tr. 216-25). Plaintiff could lift 20 pounds occasionally, ten pounds frequently; and stand, walk, and/or sit for about six hours in an eight-hour workday. (Tr. 217). He had no manipulative, visual, or communicative restrictions. (Tr. 218-19). On January 27, 2010, Willa Caldwell, M.D., reviewed Plaintiff's medical records and affirmed Dr. Perencevich's assessment. (Tr. 226).

**Vocational Testimony**

At the hearing, in the presence of the VE, Plaintiff testified he attended high school until the tenth grade and had not obtained a General Educational Development (GED) degree. (Tr. 39). Shortly after, the ALJ asked the VE to consider a hypothetical person "of the same age, education, and work experience" as Plaintiff who was able to perform light work with a sit/stand option and occasional climbing of ramps and stairs, stooping, and crouching, but no exposure to environmental irritants, unprotected heights, and use of moving machinery. (Tr. 57, 61). The VE responded that such an individual could not perform Plaintiff's past relevant work, but could perform unskilled, light jobs such as an inspector and hand packager, assembler of small products, production assembler, and photocopy machine operator. (Tr. 58, 61).

5

**ALJ Decision**

On March 23, 2011, the ALJ found Plaintiff could perform restricted light work despite his severe impairments of degenerative disc disease and COPD. (Tr. 21-22). The ALJ was tentative about listing COPD as a severe impairment. Indeed, he found there was a lack of diagnostic testing to support a diagnosis of COPD due to a chest x-ray revealing no abnormalities, a questionable COPD diagnosis, and a radiology report indicating Plaintiff was "going for disability." (Tr. 21). However, the ALJ gave Plaintiff the "benefit of the doubt" and listed COPD as a severe impairment because he had a long history of smoking and his treating physician continually diagnosed COPD. (Tr. 21-22).

The ALJ gave Dr. Siebenaler's opinion that Plaintiff remained disabled indefinitely little weight because the opinion was vague and addressed an issue reserved to the Commissioner. (Tr. 25, 231). The ALJ also considered Dr. Siebenaler's functional limitation opinion but gave it partial weight because it was not supported by the medical evidence or the record as a whole. (Tr. 25, 283). For the same reasons, the ALJ gave consultive examiner Dr. Borrillo's opinion little weight. (Tr. 24). In particular, the ALJ discounted these opinions based on Plaintiff's work history through February 2009, medical notes from treating sources, and a conservative treatment regimen. (Tr. 25).

The ALJ found Plaintiff had the residual functional capacity (RFC) to perform light work except he could not climb ladders, ropes, or scaffolds and could only occasionally climb ramps or stairs and stoop or crouch. (Tr. 22). He was required to avoid all exposure to chemicals, concentrated exposure to the use of moving machinery, and all exposure to unprotected heights. (Tr. 22). In addition, he must have the ability to sit or stand alternatively, at will, provided he is not off task more than ten percent of the work period while alternating between sitting and

standing. (Tr. 22).

Based on VE testimony, the ALJ found Plaintiff could perform work as an inspector/hand packager, assembler of small products, production assembler, and photocopy machine operator, and therefore, he was not disabled. (Tr. 27).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed a preponderance of the evidence, supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 20 C.F.R. § 404.1505(a). The Commissioner follows a five–step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?
2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is claimant's RFC and can he perform past relevant work?
5. Can the claimant do any other work considering his RFC, age, education, and work experience?

Under this five–step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only found disabled if he satisfies each element of the analysis, including inability to do other work, and meets the durational requirements. 20 C.F.R. §§ 404.1520(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ incorrectly determined he had a high school education. (Doc. 16, at 10-11). Plaintiff also claims the ALJ erred by discrediting the opinions of treating physician Dr. Siebenaler and consultive examiner Dr. Borrillo while affording greater weight to state agency physicians. (Doc. 16, at 11-13). In turn, Plaintiff claims the RFC was flawed because ALJ failed to afford these opinions the proper weight and she did not account for his hip pain, sleep apnea, and migraines. (Doc. 16, at 7, 11-12).

**ALJ's Education Finding Was Harmless**

Plaintiff argues the ALJ erred because she found he had "at least a high school education[.]" (Doc. 16, at 10; Tr. 26). Specifically, he claims substantial evidence does not support the ALJ's decision because "[w]ithout the proper education level being taken into consideration, the VE testimony [wa]s flawed and cannot be considered as evidence." (Doc. 16, at 10).

At the hearing, in the presence of the VE, Plaintiff testified he attended high school until the tenth grade and had not obtained a GED. (Tr. 39). Later in the hearing, the ALJ asked the VE to consider a hypothetical person "of the same age, education, and work experience" as Plaintiff. (Tr. 57). The VE found such an individual could perform work in the national and local economies. (Tr. 57-58). It was not until her decision *after* the hearing that the ALJ found Plaintiff had "at least a high school education." (Tr. 26). Therefore, the VE's testimony was based on an accurate description of Plaintiff's education level as established at the hearing – namely, that he attended school until the tenth grade and did not have GED. Accordingly, the VE's testimony was not flawed.

Plaintiff also claims the ALJ's "high school education" finding categorically implies he has the ability to perform semi-skilled or skilled work. 20 C.F.R. § 404.1564(4) (a person with a high school education has the ability to perform semi-skilled through skilled work). (Doc. 16, at 10). This is true. However, despite her finding, the ALJ specifically limited Plaintiff to unskilled work, which correlates with his "limited education level." *See* 20 C.F.R. § 404.1564(3). Therefore, the ALJ's finding regarding Plaintiff's education level was harmless because it would have no impact on her non-disability finding, as Plaintiff was limited to unskilled work. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009); *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.9 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality.")

**Treating Physician Rule and RFC Assessment**

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 416.927(c). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability – the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent

10

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F. 3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399,409-10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows his physician has deemed him disabled and might be bewildered when told by an ALJ he is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544. "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.*

Last, "the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(c), (d); SSR 96–6p, 1996 WL 374180, at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp. 2d at 823-24.

Here, the ALJ did not violate the treating physician rule, as she addressed Drs. Siebenaler and Borrillo's opinions and discredited them for reasons provided by the required regulatory factors.

11

First, Dr. Siebenaler's statement that Plaintiff remained "disabled indefinitely" was properly afforded little weight because a determination as to whether a claimant is disabled is a legal issue reserved for the Commissioner. (Tr. 25); 20 C.F.R. § 404.1527(d)(1). In addition, the ALJ properly noted the opinion was "vague", and therefore lacked support. § 404.1527(c)(3).

The ALJ also considered Dr. Borrillo's opinion but gave it little weight because it was not supported by the medical evidence or the record as a whole. (Tr. 25). For the same reasons, the ALJ gave Dr. Siebenaler's second opinion only partial weight. (Tr. 25). In particular, the ALJ discredited these opinions based on Plaintiff's inconsistent treatment notes from his chiropractor, work history through 2009, and a conservative treatment regimen. (Tr. 25).

As Defendant points out, the limitations imposed by Dr. Siebenaler were inconsistent with his own treatment notes, which indicated Plaintiff had some tenderness and decreased range of motion in his spine and a history of COPD, treated with Spiriva. (Tr. 208, 211, 214). Notably, Dr. Siebenaler's treatment notes lacked any sort of treatment regimen regarding Plaintiff's back and he did not prescribe medication for pain. (Tr. 208, 211-13, 231).

Moreover, as the ALJ pointed out, the limitations imposed by Dr. Siebenaler were inconsistent with the record as a whole, including Plaintiff's work history through 2009; namely, that he claimed to have injured his back in 1991 but was able to work through February 2009 before he was laid off when "the economy got bad." (Tr. 43). The ALJ also pointed to chiropractor notes which showed Plaintiff's pain improved with treatment. (Tr. 232, 274).

Likewise, the limitations imposed by Dr. Borrillo were inconsistent with the medical evidence and the record as a whole. 20 C.F.R. § 404.1527(c)(4). For example, Plaintiff was able to climb stairs to his second-story apartment (Tr. 50) and he was treated conservatively for his impairments. Moreover, evidence showed Plaintiff's back pain lessened with conservative

12

treatment (heating pads, physical therapy) and his COPD was controlled with Spiriva. (Tr. 208, 214, 232). In addition, Plaintiff's work history through 2009 does not support the level of functional severity proposed by Dr. Borrillo. (Tr. 24-25).

What is more, Dr. Siebenaler provided little to no explanation for the significant limitations he provided on the form report. (Tr. 283); § 404.1527(c)(3) (the better the explanation a source provides for his opinion, the more weight it will be given). "[C]ourts within the Sixth Circuit have cast doubt on the usefulness of such 'checkmark' or 'multiple choice' forms when unaccompanied by explanation or unsupported by physician's notes." *Doyle v. Comm'r of Soc. Sec.*, 2012 WL 4829434, at \*9 (E.D. Tenn. 2012) (citing *Boley v. Astrue*, 2012 WL 680393, at \*18 (E.D. Mich. 2012) and *Ahee v. Comm'r of Soc. Sec.*, 2008 WL 4377652, at \*4 (E.D. Mich. 2008)), *report and recommendation adopted*, 2012 WL 4829213 (E.D. Tenn. 2012); *see also*, *Hyson v. Comm'r of Soc. Sec.*, 2013 WL 2456378, at \*13 (N.D. Ohio 2013) (collecting cases which held the ALJ did not err by discounting a physician's opinion which used a checkbox form unaccompanied by explanation of her conclusions).

In sum, these reasons touched upon several factors an ALJ is required to consider under the regulatory factors when discrediting a treating physician's opinion. 20 C.F.R. § 404.1527(c)(1)-(5).

The ALJ also considered the opinions of state agency physicians Drs. Perencevich and Caldwell. (Tr. 24). Because these opinions were consistent with evidence in the record, the ALJ afforded them greater weight. *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by substantial evidence.").

The fact that the ALJ gave significant weight to state agency physicians as opposed to Drs. Siebenaler and Borrillo does not automatically indicate the ALJ's RFC determination was not supported by substantial evidence, as Plaintiff suggests. Rather, the ALJ, not a medical source, is tasked with determining a claimant's RFC. 20 C.F.R. § 404.1546(c), *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician.").

Indeed, when formulating her RFC, the ALJ noted Plaintiff could climb stairs to his second-story apartment, sit and watch television, drive, use his computer, and had very little difficulty with activities of daily living. (Tr. 23). Moreover, the ALJ concluded his complaints did not correlate with objective testing because he was treated conservatively and responded well to treatment. (Tr. 24).

The ALJ also discussed Plaintiff's chiropractic treatment before his disability onset date. (Tr. 24). To that end, the notes showed demonstrated improvement, with only occasional exacerbation of symptoms. (Tr. 24, *referring to* Tr. 194-97, 232-35). Indeed, although Plaintiff was instructed to continue chiropractic treatment, he did not. (Tr. 24, 124). The ALJ noted his failure to continue chiropractic treatment and lack of emergency room visits for back pain indicated satisfactory management of his symptoms. (Tr. 24). Accordingly, the ALJ's RFC is supported by substantial evidence, and she appropriately accorded Drs. Perencevich and Caldwell greater weight, as their opinions were consistent with the overall evidence.

Finally, Plaintiff argues the ALJ's RFC was flawed because she did not account for his hip pain, sleep apnea, and migraines. (Doc. 16, at 7, 11-12). However, the ALJ did consider these impairments when she addressed Dr. Borrillo's opinion, which appears to be the only place they are referenced other than during Plaintiff's testimony. (Tr. 24-25, 44-45). Notably, Plaintiff was

not treated for these impairments during the relevant period and the ALJ cannot find Plaintiff was disabled on a diagnosis alone. *Roark v. Astrue*, 2011 WL 1226874, at *4 (E.D. Ky. 2011) ("[I]t is the demonstrated functional limitations imposed by a condition in a particular individual, not the mere diagnosis, that determine disability.").

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).